TROY LAW, PLLC
*Attorneys for the Plaintiffs, proposed FLSA*
*Collective and Proposed Class Plaintiffs*
John Troy (JT 0481)
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355
Tel:    (718) 762-1324

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X

YUNJIAN LIN,
YOUNG JUN LI,
WEIWEI DING,
YAQIANG ZHANG,
LI WENG, and
WEITING ZHAO,

*on behalf of themselves and others similarly situated,*
                                        Plaintiffs,
                      v.
GRAND SICHUAN NY INC.
        d/b/a Grand Sichuan NY;
GRAND SICHUAN 74 ST INC.
        d/b/a Grand Sichuan 74,
GRAND SICHUAN 75 ST INC.
        d/b/a Grand Sichuan 74,
AIDI JC LLC.
        d/b/a Grand Sichuan 74,
GUANG JUN LI,
YONG SHU LI,
LI JIANG,
YONG LI LI,
GUANG LI LI,
CHENG CHEN,
AIDI XU
JIAN CHEN, and
YONG MING CHEN,
                                        Defendants.
--------------------------------------------------------------X

**Case No: 15-cv-2950**

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**F.R.C.P. 23  CLASS**
**ACTION**

**SECOND AMENDED**
**COMPLAINT**

Plaintiffs YUNJIAN LIN, YOUNG JUN LI, LI WENG, YAQIANG ZHANG, WEITING ZHAO, and WEIWEI DING on behalf of themselves and other similarly situated, by and through their attorney, Troy Law, PLLC, hereby bring this complaint against Defendants GRAND SICHUAN NY INC. d/b/a Grand Sichuan NY; GRAND SICHUAN 74 ST INC. d/b/a Grand Sichuan 74, GRAND SICHUAN 75 ST INC. d/b/a Grand Sichuan 74, AIDI JC LLC. d/b/a Grand Sichuan 74, GUANG JUN LI, YONG SHU LI, LI JIANG, YONG LI LI, GUANG LI LI, CHENG CHEN, AIDI XU, JIAN CHEN, and YONG MING CHEN, (collectively referred to as the "Defendants") and allege as follows:

## <u>INTRODUCTION</u>

1. This action is brought by Plaintiffs, on behalf of themselves as well as other similarly situated employees against Defendants for alleged violations of the Federal Labor Standards Act, ("FLSA") 29 U.S.C. § 201 *et seq.* and of the New York Labor Law (NYLL), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2. Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay its employees, including Plaintiff, minimum wage and overtime compensation for all hours worked over forty (40) each workweek.

3. Defendants refused to record all of the time that Plaintiffs and similarly situated employed by Corporate Defendants work or worked, including work done in excess of forty hours each week.

4. Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wage, (2) unpaid overtime wages, (3) liquidated damages, (4)

prejudgment and post-judgment interest; and/or (5) attorneys' fees and costs.

5.  Plaintiffs further allege pursuant to New York Labor Law § 650 *et seq.* and 12 New York

Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the

Defendants:   (1) unpaid minimum wage compensation, (2) unpaid overtime compensation, (3) up

to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of

Hire Notice detailing rates of pay and payday, (4) up to five thousand dollars ($5,000) per

Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists

employee's hours along with the name, employer's name, employer's address and

telephone number, employee's rate or rates of pay, any deductions made from employee's

wages, any allowances claimed as part of the minimum wage, and the employee's gross and

net wages for each pay day, (5) liquidated damages equal to the sum of unpaid minimum

wage, (6) unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five

percent under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred percent after April 9,

2011 under NY Wage Theft Prevention Act, (7) 9% simple prejudgment interest provided

by NYLL, (8) post-judgment interest, and (9) attorney's fees and costs.

## JURISDICTION AND VENUE

6.  This Court has original federal question jurisdiction over this controversy under 29 U.S.C.

§216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor

Law claims pursuant to 28 U.S.C. § 1367(a).

7.  Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and

(c), because Defendants conduct business in this District, and the acts and omissions giving

rise to the claims herein alleged took place in this District.

**<u>PLAINTIFFS</u>**

8.  Plaintiff YUNJIAN LIN was employed by GRAND SICHUAN 74 ST INC. d/b/a Grand Sichuan 74, and GRAND SICHUAN 75 ST INC. d/b/a Grand Sichuan 74 at 307 Amsterdam Ave, New York, NY 10023 as a cook (oil wok worker).

9.  Plaintiff YOUNG JUN LI was employed by GRAND SICHUAN 74 ST INC. d/b/a Grand Sichuan 74, and GRAND SICHUAN 75 ST INC. d/b/a Grand Sichuan 74 at 307 Amsterdam Ave, New York, NY 10023 as a deliveryman.

10. Plaintiff WEIWEI DING was employed by GRAND SICHUAN 74 ST INC. d/b/a Grand Sichuan 74, and GRAND SICHUAN 75 ST INC. d/b/a Grand Sichuan 74 at 307 Amsterdam Ave, New York, NY 10023 as a deliveryman.

11. Plaintiff YAQIANG ZHANG was employed by GRAND SICHUAN NY INC. d/b/a Grand Sichuan NY located at 227 Lexington Avenue, New York, NY 10016 as a deliveryman.

12. Plaintiff YAQIANG ZHANG was further employed by GRAND SICHUAN 74 ST INC. d/b/a Grand Sichuan 74, GRAND SICHUAN 75 ST INC. d/b/a Grand Sichuan 74, and AIDI JC, LLC. at 307 Amsterdam Ave, New York, NY 10023 as a deliveryman.

13. Plaintiff LI WENG was employed by GRAND SICHUAN 74 ST INC. d/b/a Grand Sichuan 74 at 307 Amsterdam Ave, New York, NY 10023 as a deliveryman.

14. Plaintiff WEITING ZHAO was employed by GRAND SICHUAN NY INC. d/b/a Grand Sichuan NY located at 227 Lexington Avenue, New York, NY 10016 as a deliveryman.

15. Plaintiff WEITING ZHAO was further employed by GRAND SICHUAN 74 ST INC. d/b/a Grand Sichuan 74, GRAND SICHUAN 75 ST INC. d/b/a Grand Sichuan 74.

## DEFENDANTS

### *Corporate Defendants*

16. Defendant GRAND SICHUAN NY INC. d/b/a Grand Sichuan NY is a domestic business corporation organized under the laws of the State of New York with a principal address at 227 Lexington Avenue, New York, NY 10016.

17. GRAND SICHUAN NY INC. d/b/a Grand Sichuan NY was a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

18. GRAND SICHUAN NY INC. d/b/a Grand Sichuan NY purchased and handled goods moved in interstate commerce.

19. Defendant GRAND SICHUAN 74 ST INC. d/b/a Grand Sichuan 74 was a domestic business corporation organized under the laws of the State of New York with a principal address at 307 Amsterdam Ave, New York, NY 10023.

20. GRAND SICHUAN 74 ST INC. d/b/a Grand Sichuan 74 was a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

21. GRAND SICHUAN 74 ST INC. d/b/a Grand Sichuan 74 purchased and handled goods moved in interstate commerce.

22. Defendant GRAND SICHUAN 75 ST INC. d/b/a Grand Sichuan 74 is a domestic business corporation organized under the laws of the State of New York with a principal address at 307 Amsterdam Ave, New York, NY 10023.

23. GRAND SICHUAN 75 ST INC. d/b/a Grand Sichuan 74 is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per

year.

24. GRAND SICHUAN 75 ST INC. d/b/a Grand Sichuan 74 purchased and handled goods moved in interstate commerce.

25. Defendant AIDI JC, LLC. d/b/a Grand Sichuan 74 is a domestic business corporation organized under the laws of the State of New York with a principal address at 307 Amsterdam Ave, New York, NY 10023.

26. AIDI JC, LLC. d/b/a Grand Sichuan 74 is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

27. AIDI JC, LLC. d/b/a Grand Sichuan 74 purchased and handled goods moved in interstate commerce.

### *Owner/ Operator Defendants*

28. The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendant GRAND SICHUAN NY INC. d/b/a Grand Sichuan NY; GRAND SICHUAN 74 ST INC. d/b/a Grand Sichuan 74; GRAND SICHUAN 75 ST INC. d/b/a Grand Sichuan 74; and AIDI JC, LLC. d/b/a Grand Sichuan 74, and as one of the ten largest shareholders, are individually responsible for unpaid wages under the New York Business Corporation Law.

29. Owner/ Operator Defendant GUANG JUN LI is known as "Boss" to Plaintiffs YAQIANG ZHANG and WEITING ZHAO.

30. As the Chief Executive Officer of GRAND SICHUAN NY INC. d/b/a Grand Sichuan NY, GUANG JUN LI (1) had the power to hire and fire GRAND SICHUAN NY INC. d/b/a Grand Sichuan NY employees, (2) supervised and controlled GRAND SICHUAN NY INC. d/b/a Grand Sichuan NY employee work schedules or conditions of employment, (3)

determined the rate and method of payment of GRAND SICHUAN NY INC. d/b/a Grand

Sichuan NY employees, and (4) maintained employee records.

31. Owner/ Operator Defendant GUANG JUN LI acted intentionally and maliciously and is an

employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29

C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable

with GRAND SICHUAN NY INC. d/b/a Grand Sichuan NY.

32. Owner/ Operator Defendant YONG SHU LI is known as "Boss" to Plaintiffs YAQIANG

ZHANG and WEITING ZHAO.

33. As the Chief Executive Officer of GRAND SICHUAN NY INC. d/b/a Grand Sichuan NY,

YONG SHU LI (1) had the power to hire and fire GRAND SICHUAN NY INC. d/b/a

Grand Sichuan NY employees, (2) supervised and controlled GRAND SICHUAN NY INC.

d/b/a Grand Sichuan NY employee work schedules or conditions of employment, (3)

determined the rate and method of payment of GRAND SICHUAN NY INC. d/b/a Grand

Sichuan NY employees, and (4) maintained employee records.

34. Owner/ Operator Defendant YONG SHU LI acted intentionally and maliciously and is an

employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29

C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable

with GRAND SICHUAN NY INC. d/b/a Grand Sichuan NY.

35. As the Chief Executive Officer and President of GRAND SICHUAN 74 ST, INC. d/b/a

Grand Sichuan 74, LI JIANG (1) had the power to hire and fire GRAND SICHUAN 74 ST,

INC. d/b/a Grand Sichuan 74 employees, (2) supervised and controlled GRAND SICHUAN

74 ST, INC. d/b/a Grand Sichuan 74 employee work schedules or conditions of

employment, (3) determined the rate and method of payment of GRAND SICHUAN 74 ST,

INC. d/b/a Grand Sichuan 74 employees, and (4) maintained employee records.

36. Owner/ Operator Defendant LI JIANG acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with GRAND SICHUAN 74 ST, INC. d/b/a Grand Sichuan 74.

37. Owner/ Operator Defendant YONG LI LI is known as "Big Lady Boss" to Plaintiffs.

38. YONG LI LI (1) had the power to hire and fire GRAND SICHUAN 74 ST, INC. d/b/a Grand Sichuan 74 and GRAND SICHUAN 75 ST, INC. d/b/a Grand Sichuan 74 employees, (2) supervised and controlled GRAND SICHUAN 74 ST, INC. d/b/a Grand Sichuan 74 and GRAND SICHUAN 75 ST, INC. d/b/a Grand Sichuan 74 employee work schedules or conditions of employment, (3) determined the rate and method of payment of GRAND SICHUAN 74 ST, INC. d/b/a Grand Sichuan 74 and GRAND SICHUAN 75 ST, INC. d/b/a Grand Sichuan 74 employees, and (4) maintained employee records.

39. Owner/ Operator Defendant YONG LI LI acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with GRAND SICHUAN 74 ST, INC. d/b/a Grand Sichuan 74 and GRAND SICHUAN 75 ST, INC. d/b/a Grand Sichuan 74.

40. Owner/ Operator Defendant GUANG LI LI, known as "Big Boss" to Plaintiffs, is the father of YONG LI LI.

41. GUANG LI LI (1) had the power to hire and fire GRAND SICHUAN 74 ST, INC. d/b/a Grand Sichuan 74 and GRAND SICHUAN 75 ST, INC. d/b/a Grand Sichuan 74 employees, (2) supervised and controlled GRAND SICHUAN 74 ST, INC. d/b/a Grand Sichuan 74 and

GRAND SICHUAN 75 ST, INC. d/b/a Grand Sichuan 74 employee work schedules or conditions of employment, (3) determined the rate and method of payment of GRAND SICHUAN 74 ST, INC. d/b/a Grand Sichuan 74 and GRAND SICHUAN 75 ST, INC. d/b/a Grand Sichuan 74 employees, and (4) maintained employee records.

42. Owner/ Operator Defendant GUANG LI LI acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with GRAND SICHUAN 74 ST, INC. d/b/a Grand Sichuan 74 and GRAND SICHUAN 75 ST, INC. d/b/a Grand Sichuan 74.

43. CHENG CHEN (1) had the power to hire and fire GRAND SICHUAN 74 ST, INC. d/b/a Grand Sichuan 74 and GRAND SICHUAN 75 ST, INC. d/b/a Grand Sichuan 74 employees, (2) supervised and controlled GRAND SICHUAN 74 ST, INC. d/b/a Grand Sichuan 74 and GRAND SICHUAN 75 ST, INC. d/b/a Grand Sichuan 74 employee work schedules or conditions of employment, (3) determined the rate and method of payment of GRAND SICHUAN 74 ST, INC. d/b/a Grand Sichuan 74 and GRAND SICHUAN 75 ST, INC. d/b/a Grand Sichuan 74 employees, and (4) maintained employee records.

44. Owner/ Operator Defendant CHENG CHEN acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with GRAND SICHUAN 74 ST, INC. d/b/a Grand Sichuan 74 and GRAND SICHUAN 75 ST, INC. d/b/a Grand Sichuan 74.

45. Owner/ Operator Defendant YONG MING CHEN is the husband of YONG LI LI

46. YONG MING CHEN (1) had the power to hire and fire GRAND SICHUAN 74 ST, INC.

d/b/a Grand Sichuan 74 and GRAND SICHUAN 75 ST, INC. d/b/a Grand Sichuan 74

employees, (2) supervised and controlled GRAND SICHUAN 74 ST, INC. d/b/a Grand

Sichuan 74 and GRAND SICHUAN 75 ST, INC. d/b/a Grand Sichuan 74 employee work

schedules or conditions of employment, (3) determined the rate and method of payment of

GRAND SICHUAN 74 ST, INC. d/b/a Grand Sichuan 74 and GRAND SICHUAN 75 ST,

INC. d/b/a Grand Sichuan 74 employees, and (4) maintained employee records.

47. YONG MING CHEN supervised all kitchen workers, and did hire and fire kitchen workers.

48. Owner/ Operator Defendant YONG MING CHEN acted intentionally and maliciously and is

an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder,

29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally

liable with GRAND SICHUAN 74 ST, INC. d/b/a Grand Sichuan 74 and GRAND

SICHUAN 75 ST, INC. d/b/a Grand Sichuan 74.

49. Owner/ Operator Defendant AIDI XU is known as "Lady Boss" to Plaintiffs YAQIANG

ZHANG.

50. AIDI XU (1) had the power to hire and fire AIDI JC LLC d/b/a Grand Sichuan 74

employees, (2) supervised and controlled AIDI JC LLC d/b/a Grand Sichuan 74 employee

work schedules or conditions of employment, (3) determined the rate and method of

payment of AIDI JC LLC d/b/a Grand Sichuan 74 employees, and (4) maintained employee

records.

51. Owner/ Operator Defendant AIDI XU acted intentionally and maliciously and is an

employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29

C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable

with AIDI JC LLC d/b/a Grand Sichuan 74.

52. JIAN CHEN is known as "Boss" to Plaintiffs to Plaintiffs YAQIANG ZHANG.

53. JIAN CHEN (1) had the power to hire and fire AIDI JC LLC d/b/a Grand Sichuan 74 employees, (2) supervised and controlled AIDI JC LLC d/b/a Grand Sichuan 74 employee work schedules or conditions of employment, (3) determined the rate and method of payment of AIDI JC LLC d/b/a Grand Sichuan 74 employees, and (4) maintained employee records.

54. Owner/ Operator Defendant JIAN CHEN acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with AIDI JC LLC d/b/a Grand Sichuan 74.

55. Plaintiffs have fulfilled all conditions precedent to the institution of this action and/ or conditions have been waived.

## STATEMENT OF FACTS

56. Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiffs, the proposed FLSA Collective, and the potential Rule 23 Class.

***Corporate Defendants GRAND SICHUAN NY, INC. d/b/a Grand Sichuan NY; GRAND SICHUAN 74 ST INC. d/b/a Grand Sichuan 74 and GRAND SICHUAN 75 ST INC. d/b/a Grand Sichuan 74 Constitute an Enterprise Under the FLSA***

57. Corporate Defendants GRAND SICHUAN NY, INC. d/b/a Grand Sichuan NY and GRAND SICHAUN 74 ST INC. d/b/a Grand Sichuan 74 and GRAND SICHUAN 75 ST INC. d/b/a Grand Sichuan 74 are both members of a family-owned enterprise known as "Grand Sichuan".

58. At all times relevant herein, Grand Sichuan was, and continues to be, a single and joint employer with a high degree of interrelated and unified operation, sharing common

management, centralized control of labor relations, common ownership, common control, common business purposes and interrelated business goals.

59. The first store of the Grand Sichuan enterprise was GRAND SICHUAN NY, INC. d/b/a Grand Sichuan NY at 227 Lexington Avenue, New York, NY 10016.

60. It was established in 2002 by GUANG JUN LI, the brother of GUANG LI LI and uncle of YONG LI LI.

61. In March 9, 2011, GRAND SICHUAN 74 ST, INC. was opened by GUANG LI LI and his daughter YONG LI LI.

62. GRAND SICHUAN NY, INC. and GRAND SICHUAN 74 ST, INC. shared common management and centralized control over Grand Sichuan employees and restaurant goods at both stores.

63. When Plaintiffs or GRAND SICHUAN 74 ST, INC/ GRAND SICHUAN 75 ST INC. d/b/a Grand Sichuan 74. employees ask for time off, GRAND SICHUAN NY, INC. d/b/a Grand Sichuan NY would substitute GRAND SICHUAN 74 ST, INC/ GRAND SICHUAN 75 ST INC. d/b/a Grand Sichuan 74 employees.

64. When either GRAND SICHUAN 74 ST, INC/ GRAND SICHUAN 75 ST INC. d/b/a Grand Sichuan 74 or GRAND SICHUAN NY, INC. d/b/a Grand Sichuan NY is short on restaurant goods, deliverymen would transport restaurant goods between the stores.

65. Plaintiff YAQIANG ZHANG was re-assigned from working at GRAND SICHUAN NY, INC. d/b/a Grand Sichuan NY to GRAND SICHAUN 74 ST INC. d/b/a Grand Sichuan 74 by the LI family.

*Corporate Defendants GRAND SICHUAN 75 ST INC. d/b/a Grand Sichuan 74 and AIDI JC LLC are Joint and Successor Employers under the Fair Labor Standards Act*

66. Corporate Defendant GRAND SICHUAN 75 ST, INC. did business as Grand Sichuan 74 until on or about April 29, 2015.

67. On or about April 30, 2015, AIDI JC, LLC took over Grand Sichuan 74 and retained substantially the same workforce, including Plaintiff YAQIANG ZHANG.

68. YAQIANG ZHANG worked under substantially the same working conditions with a subminimum wage pay without the proper FLSA wage tip notice and with the non-tipped side work requirement.

69. Corporate Defendant AIDI JC, LLC knows or should have known of its predecessors' legal obligations as a result of its wage-and-hour violations.

70. Despite knowledge of GRAND SICHUAN 75 ST, INC.'s wage-and-hour violations, AIDI JC, LLC continued to business as Grand Sichuan 74 and continued GRAND SICHUAN 75 ST, INC.'s wage-and-hour violations.

71. As a result, AIDI JC, LLC is jointly and severally liable with GRAND SICHUAN 75 ST INC. for the minimum wage and overtime compensation shortfall due to all Plaintiffs.

*Plaintiff YUNJIAN LIN*

72. From on or about October 1, 2010 to March 31, 2014, Plaintiff YUNJIAN LIN was employed by Owner/Operator Defendants LI JIANG, YONG LI LI, GUANG LI LI, and CHENG CHEN as an oil wok for GRAND SICHUAN 74 ST INC. d/b/a Grand Sichuan 74, and GRAND SICHUAN 75 ST INC. d/b/a Grand Sichuan 74 located at 307 Amsterdam Ave, New York, NY 10023.

73. At all relevant times, Plaintiff YUNJIAN LIN's regular work schedule ran from:

   a. 11:30 to 22:30 on Monday, Tuesday and Thursday, with a break from 15:00 to

       17:00 for eleven (11) hours each day, thirty-three (33) hours each week;

    b. 11:30 to 23:00 on Friday, with a break from 15:00 to 17:00, for eleven and a half (11.5) hours each week; and

    c. 12:00 to 23:00 on Saturday and Sunday, for twelve (12) hours each day and twenty-four (24) hours each week with no break.

74. At all relevant times, Plaintiff YUNJIAN LIN worked around sixty-eight and a half (68.5) hours per week.

75. Plaintiff YUNJIAN LIN was paid in cash, biweekly, at monthly rate that varied over my employment.

76. Plaintiff YUNJIAN LIN started at a rate of $1,800 per month, and received periodic raises throughout Plaintiff YUNJIAN LIN's employment, until Plaintiff YUNJIAN LIN was being paid $2,300 per month at the time my employment ended.

77. As a result, Plaintiff YUNJIAN LIN's effective rate of pay fell below the statutory federal and state minimum wages in effect at outset of his employment.

78. Plaintiff YUNJIAN LIN was also not informed of his hourly pay rate and he was not paid overtime pay for overtime work.

79. Plaintiff YUNJIAN LIN was not compensated at least at one-and-one-half of the minimum wage or his calculated hourly wage, whichever is greater, for all hours worked above forty (40) in each workweek.

80. Plaintiff YUNJIAN LIN was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours.

**_Plaintiff YOUNG JUN LI_**

81. From on or about July 1, 2012 to February 29, 2014 Plaintiff YOUNG JUN LI was

employed by Owner/Operator Defendants LI JIANG, YONG LI LI, GUANG LI LI, and

CHENG CHEN as a deliveryman for GRAND SICHUAN 74 ST INC. d/b/a Grand Sichuan

74, and GRAND SICHUAN 75 ST INC. d/b/a Grand Sichuan 74 located at 307 Amsterdam

Ave, New York, NY 10023.

82. Plaintiff was hired by "Lady Boss" YONG LI LI.

**July 1, 2012 to February 28, 2013; December 2013 to February 28, 2014**

83. From on or about July 1, 2012 to February 28, 2013, and then again from December 2013 to

February 28, 2014, Plaintiff YOUNG JUN LI's regular work schedule ran from:

> a. 11:30 to 21:30 on Mondays, Wednesdays and Fridays with a break from 15:00 to
>
> 17:00, for ten (10) hours each day, thirty (30) hours each week;
>
> b. 17:30 to 21:30 on Tuesdays and Thursdays, for four (4) hours each day, eight (8)
>
> hours each week, with no break; and
>
> c. 17:30 to 23:00 on Saturdays and Sundays, for five and a half (5.5) hours each day,
>
> eleven (11) hours each week.

84. From July 1, 2013 to February 28, 2013 and then again from December 2013 to February

28, 2014, Plaintiff had two (2) hours of unpaid breaks on Mondays, Wednesdays and

Fridays from 15:00 to 17:00. However, if an order comes in at 15:00, Plaintiff must first

deliver the order before breaking.

85. In addition, Plaintiff was required to do non-tipped side jobs, including, but not limited to,

cutting the Chinese broccoli, doing and packing the restaurant delivery sauces, packing the

delivery food inside the delivery bag for delivery during the two (2) hour break.

86. On all other days, Plaintiff was not given a fixed time for dinner. He had to eat his meal

while on duty. If a delivery order comes in, his meal period ends and he goes to delivery.

87. At all relevant times, Plaintiff was paid five dollars ($5), instead of ($5.65) each hour, but was not paid for all hours worked.

88. Plaintiff was paid only three hundred and eighty dollars ($380) every two (2) weeks.

89. Pursuant to NYCRR Part 146-2.2 and 29 USC 203 (m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of the tip credit.

90. Defendants never informed Plaintiff that they were taking tip credit towards the minimum wage.

91. Further, Plaintiff was required to commit part of his work day in non-tipped side jobs, including, but not limited to, cutting the Chinese broccoli, doing and packing the restaurant delivery sauces, packing the delivery food inside the delivery bag for delivery.

92. Upon information and belief, this non-tipped work exceeds two hours or twenty percent (20%) of the Plaintiffs' workday.

93. Plaintiff was not compensated at least at one-and-one-half of the minimum wage or his calculated hourly wage, whichever is greater, for all hours worked above forty (40) in each workweek.

94. Plaintiff was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours.

95. Instead of providing Plaintiff with full and accurate paystubs, Defendants instead required Plaintiff to sign work schedules that states the number of work hours worked as forty (40) hours.

**March 1, 2013 to December 2013**

96. From on or about March 1, 2013 to December 2013, Plaintiff YOUNG JUN LI's regular

work schedule ran from:

>  d. 11:30 to 21:30 on Mondays through Fridays with a break from 15:00 to 17:00, for
>
>  ten (10) hours each day, fifty (50) hours each week;
>
>  e. 17:30 to 23:00 on Saturdays and Sundays, for five and a half (5.5) hours each day,
>
>  eleven (11) hours each week.

97. From March 1, 2013 to December 2013, Plaintiff had two (2) hours of unpaid breaks
Mondays through Fridays from 15:00 to 17:00. However, if an order comes in at 15:00,
Plaintiff must first deliver the order before breaking.

98. In addition, Plaintiff was required to do non-tipped side jobs, including, but not limited to,
cutting the Chinese broccoli, doing and packing the restaurant delivery sauces, packing the
delivery food inside the delivery bag for delivery during the two (2) hour break.

99. In addition, Plaintiff was required to do non-tipped side jobs, including, but not limited to,
cutting the Chinese broccoli, doing and packing the restaurant delivery sauces, packing the
delivery food inside the delivery bag for delivery during the two (2) hour break.

100.    On all other days, Plaintiff was not given a fixed time for dinner. He had to eat his
meal while on duty. If a delivery order comes in, his meal period ends and he goes to
delivery.

101.    At all relevant times, Plaintiff was paid five dollars ($5), instead of ($5.65) each
hour, but was not paid for all hours worked.

102.    Plaintiff was paid only three hundred and eighty dollars ($380) each week.

103.    Pursuant to NYCRR Part 146-2.2 and 29 USC 203 (m), an employer cannot take credit
towards the basic minimum wage if a service employee or food service worker has not
received notification of the tip credit.

104.    Defendants never informed Plaintiff that they were taking tip credit towards the minimum wage.

105.    Further, Plaintiff was required to commit part of his work day in non-tipped side jobs, including, but not limited to, cutting the Chinese broccoli, doing and packing the restaurant delivery sauces, packing the delivery food inside the delivery bag for delivery.

106.    Upon information and belief, this non-tipped work exceeds two hours or twenty percent (20%) of the Plaintiffs' workday.

107.    Plaintiff was not compensated at least at one-and-one-half of the minimum wage or his calculated hourly wage, whichever is greater, for all hours worked above forty (40) in each workweek.

108.    Plaintiff was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours.

109.    Instead of providing Plaintiff with full and accurate paystubs, Defendants instead required Plaintiff to sign work schedules that states the number of work hours worked as forty (40) hours.

110.    As part of Plaintiff's employment with Defendants, Plaintiff was required to bear the cost of the purchase of three (3) electric bicycles, costing seven hundred dollars ($700), and three (3) batteries costing one hundred and forty dollars ($140) each. The last electric bicycle costs one thousand four hundred and fifty dollars ($1450), and the battery costing five hundred dollars ($500).

**_Plaintiff WEIWEI DING_**

111.    From on or about September 2012 to March 2013, and again from December 2013 to December 2014 Plaintiff WEIWEI DING was employed by Owner/Operator Defendants LI

JIANG, YONG LI LI, GUANG LI LI, and CHENG CHEN as a deliveryman for GRAND

SICHUAN 74 ST INC. d/b/a Grand Sichuan 74, and GRAND SICHUAN 75 ST INC. d/b/a

Grand Sichuan 74 located at 307 Amsterdam Ave, New York, NY 10023.

112.    From September 2012 to March 2013, and again from December 2013 to December

2014, Plaintiff WEIWEI DING's regular work schedule ran from:

      f.  11:30 to 21:30 on Tuesdays, Wednesdays and Thursdays with a break from 15:00

         to 17:00, for ten (10) hours each day, thirty (30) hours each week,;

      g. 17:30 to 21:30 on Mondays and Fridays, for four (4) hours each day, eight (8) hours

         each week, with no break; and

      h. 17:30 to 23:00 on Saturdays and Sundays, for five and a half (5.5) hours each day,

         eleven (11) hours each week.

113.    From September 2012 to March 2013, Plaintiff had two (2) hours of unpaid breaks

from 15:00 to 17:00 on Tuesdays, Wednesdays and Thursdays. However, if an order comes

in at 15:00, Plaintiff must first deliver the order before breaking.

114.    In addition, Plaintiff was required to do non-tipped side jobs, including, but not

limited to, cutting the Chinese broccoli, doing and packing the restaurant delivery sauces,

packing the delivery food inside the delivery bag for delivery during the two (2) hour break.

115.    On all other days, Plaintiff was not given a fixed time for dinner. He had to eat his

meal while on duty. If a delivery order comes in, his meal period ends and he goes to

delivery.

116.    At all relevant times, Plaintiff was paid five dollars ($5), instead of ($5.65) each

hour, but was not paid for all hours worked.

117.    Pursuant to NYCRR Part 146-2.2 and 29 USC 203 (m), an employer cannot take credit

towards the basic minimum wage if a service employee or food service worker has not received notification of the tip credit.

118.    Defendants never informed Plaintiff that they were taking tip credit towards the minimum wage.

119.   Further, Plaintiff was required to commit part of his work day in non-tipped side jobs, including, but not limited to, cutting the Chinese broccoli, doing and packing the restaurant delivery sauces, packing the delivery food inside the delivery bag for delivery.

120.    Upon information and belief, this non-tipped work exceeds two hours or twenty percent (20%) of the Plaintiffs' workday.

121.    Plaintiff was not compensated at least at one-and-one-half of the minimum wage or his calculated hourly wage, whichever is greater, for all hours worked above forty (40) in each workweek.

122.    Plaintiff was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours.

123.    Instead of providing Plaintiff with full and accurate paystubs, Defendants instead required Plaintiff to sign work schedules that states the number of work hours worked as forty (40) hours.

### *Plaintiff YAQIANG ZHANG*

### **March 2009 to August 21, 2011**
124.   From on or about March 2009 to August 31, 2011, Plaintiff YAQIANG ZHANG was employed by Owner/Operator Defendants GUANG JUN LI and YONG SHU LI as a deliveryman for GRAND SICHUAN NY INC. d/b/a Grand Sichuan NY located at 227 Lexington Avenue, New York, NY 10016.

125.    From March 2009 to August 31, 2011, Plaintiff YAQIANG ZHANG's regular work
schedule ran from:

   i.  Around 11:15 to around 22:00 from Mondays through Saturdays, with no break,

   for around ten and three quarters ($10\frac{3}{4}$) hours each day, sixty four and one half

   ($64\frac{1}{2}$) hours each week.

126.    Plaintiff was not given a fixed time for dinner. He had to eat his meal while on duty.
If a delivery order comes in, his meal period ends and he goes to delivery.

127.    At all relevant times, Plaintiff was paid nine hundred dollars ($900) each month.

128.    Pursuant to NYCRR Part 146-2.2 and 29 USC 203 (m), an employer cannot take credit
towards the basic minimum wage if a service employee or food service worker has not
received notification of the tip credit.

129.    Defendants never informed Plaintiff that they were taking tip credit towards the
minimum wage.

130.    Further, Plaintiff was required to commit part of his work day in non-tipped side jobs,
including, but not limited to, cutting the Chinese broccoli, doing and packing the restaurant
delivery sauces, packing the delivery food inside the delivery bag for delivery.

131.    Upon information and belief, this non-tipped work exceeds two hours or twenty
percent (20%) of the Plaintiffs' workday.

132.    Plaintiff was not compensated at least at one-and-one-half of the minimum wage or
his calculated hourly wage, whichever is greater, for all hours worked above forty (40) in
each workweek.

133.    Plaintiff was not compensated for New York's "spread of hours" premium for shifts

that lasted longer than ten (10) hours.

134.      Instead of providing Plaintiff with full and accurate paystubs, Defendants instead

required Plaintiff to sign work schedules that states the number of work hours worked as

forty (40) hours.

**September 1, 2011 to April 29, 2016**

135.   From on or about September 1, 2011 to April 29, 2016, Plaintiff YAQIANG ZHANG

was employed by Owner/Operator Defendants LI JIANG, YONG LI LI, GUANG LI LI,

and CHENG CHEN as a deliveryman for GRAND SICHUAN 74 ST INC. d/b/a Grand

Sichuan 74 located at 307 Amsterdam Ave, New York, NY 10023.

136.   From September 1, 2011 to April 29, 2016. YAQIANG ZHANG's regular work schedule

ran from:

  j.  17:30 to 22:30 from Mondays through Thursdays for five (5) hours each day and

     twenty (20) hours each week;

  k. 17:30 to 23:00 on Fridays for five and a half (5.5) hours each week;

  l.  12:00 to 22:00 on Saturdays and Sundays for ten (10) hours each day and twenty

     (20) hours each week with no break.

137.      From 2011 to 2012, Plaintiff was paid one hundred and seventy dollars ($170) per

week.

138.      From 2013 onwards, Plaintiff was paid five dollars ($5) for each hour worked.

139.   Pursuant to NYCRR Part 146-2.2 and 29 USC 203 (m), an employer cannot take credit

towards the basic minimum wage if a service employee or food service worker has not

received notification of the tip credit.

140.      Defendants never informed Plaintiff that they were taking tip credit towards the

minimum wage.

141.    Further, Plaintiff was required to commit part of his work day in non-tipped side jobs, including, but not limited to, cutting the Chinese broccoli, doing and packing the restaurant delivery sauces, packing the delivery food inside the delivery bag for delivery.

142.    Upon information and belief, this non-tipped work exceeds two hours or twenty percent (20%) of the Plaintiffs' workday.

143.    Plaintiff was not compensated at least at one-and-one-half of the minimum wage or his calculated hourly wage, whichever is greater, for all hours worked above forty (40) in each workweek.

144.    Plaintiff was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours.

145.    Instead of providing Plaintiff with full and accurate paystubs, Defendants instead required Plaintiff to sign work schedules that states the number of work hours worked as forty (40) hours.

**April 30, 2016 to May 12, 2016**

146.    From on or about April 30, 2016 to May 12, 2016, Plaintiff YAQIANG ZHANG was employed by Owner/Operator Defendants AIDI XU, JIAN CHEN, as a deliveryman for GRAND SICHUAN 74 ST INC. d/b/a Grand Sichuan 74 located at 307 Amsterdam Ave, New York, NY 10023.

147.    From April 30, 2016 to May 12, 2016 YAQIANG ZHANG's regular work schedule ran from:

   a. 17:30 to 22:30 from Mondays through Thursdays for five (5) hours each day and twenty (20) hours each week;

b.17:30 to 23:00 on Fridays for five and a half (5.5) hours each week;

c.12:00 to 22:00 on Saturdays and Sundays for ten (10) hours each day and twenty (20) hours each week with no break.

148.    At all relevant times, Plaintiff was paid seven dollars and fifty cents ($7.50) for each hour worked.

149.    Pursuant to NYCRR Part 146-2.2 and 29 USC 203 (m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of the tip credit.

150.    Defendants never informed Plaintiff that they were taking tip credit towards the minimum wage.

151.    Further, Plaintiff was required to commit part of his work day in non-tipped side jobs, including, but not limited to, cutting the Chinese broccoli, doing and packing the restaurant delivery sauces, packing the delivery food inside the delivery bag for delivery.

152.    Upon information and belief, this non-tipped work exceeds two hours or twenty percent (20%) of the Plaintiffs' workday.

153.    Plaintiff was not compensated at least at one-and-one-half of the minimum wage or his calculated hourly wage, whichever is greater, for all hours worked above forty (40) in each workweek.

154.    Plaintiff was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours.

155.    Instead of providing Plaintiff with full and accurate paystubs, Defendants instead required Plaintiff to sign work schedules that states the number of work hours worked as forty (40) hours.

156.     As part of Plaintiff's employment with Defendants, Plaintiff was required to bear the cost of the purchase of three electric bicycles, costing one thousand five hundred dollars ($1500) each and four thousand five hundred dollars ($4500) in total, in addition to two batteries per year with each battery costing four hundred and sixty dollars ($460) for seven hundred and twenty dollars a year.

157.     In addition, Plaintiff spent around two thousand dollars ($2000) each year in maintaining his electric bicycle.

### Plaintiff LI WENG

158.   From on or about November 2011 to December 14, 2012, Plaintiff LI WENG was employed by Owner/Operator Defendants as a deliveryman for GRAND SICHUAN 74 ST INC. d/b/a Grand Sichuan 74 located at 307 Amsterdam Ave, New York, NY 10023.

159.   Plaintiff was fired by LI JIANG.

160.   From November 2011 to December 14, 2012, and again from December 2013 to December 2014, Plaintiff LI WENG's regular work schedule ran from:

     a. 11:30 to 22:30 on Mondays and Fridays with a break from 15:00 to 17:00, for eleven (11) hours each day, twenty-two (22) hours each week.

161.     At all relevant times, Plaintiff had two (2) hours of unpaid breaks from 15:00 to 17:00. However, if an order comes in at 15:00, Plaintiff must first deliver the order before breaking.

162.     In addition, Plaintiff was required to do non-tipped side jobs, including, but not limited to, cutting the Chinese broccoli, doing and packing the restaurant delivery sauces, packing the delivery food inside the delivery bag for delivery during the two (2) hour break.

163.     On all other days, Plaintiff was not given a fixed time for dinner. He had to eat his

meal while on duty. If a delivery order comes in, his meal period ends and he goes to delivery.

164.     At all relevant times, Plaintiff was paid a flat compensation of seventy (70) dollars per week.

165.   Pursuant to NYCRR Part 146-2.2 and 29 USC 203 (m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of the tip credit.

166.     Defendants never informed Plaintiff that they were taking tip credit towards the minimum wage.

167.   Further, Plaintiff was required to commit part of his work day in non-tipped side jobs, including, but not limited to, cutting the Chinese broccoli, doing and packing the restaurant delivery sauces, packing the delivery food inside the delivery bag for delivery.

168.     Upon information and belief, this non-tipped work exceeds two hours or twenty percent (20%) of the Plaintiffs' workday.

169.     Plaintiff was not compensated at least at one-and-one-half of the minimum wage or his calculated hourly wage, whichever is greater, for all hours worked above forty (40) in each workweek.

170.     Plaintiff was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours.

171.     Instead of providing Plaintiff with full and accurate paystubs, Defendants instead required Plaintiff to sign work schedules that states the number of work hours worked as forty (40) hours.

172.     As part of Plaintiff's employment with Defendants, Plaintiff was required to bear

the cost of the purchase of an electric bicycle, costing seven hundred and fifty dollars ($750).

### Plaintiff WEITING ZHAO

173.   From on or about March 2013 to December 2013, WEITING ZHAO was employed by Owner/Operator Defendants LI JIANG, YONG LI LI, GUANG LI LI, and CHENG CHEN as a deliveryman for GRAND SICHUAN 74 ST INC. d/b/a Grand Sichuan 74, and GRAND SICHUAN 75 ST INC. d/b/a Grand Sichuan 74 located at 307 Amsterdam Ave, New York, NY 10023.

174.   From September 2012 to March 2013, and again from December 2013 to December 2014, Plaintiff WEIWEI DING's regular work schedule ran from:

      a. 11:30 to 21:30 on Tuesdays, Wednesdays and Thursdays with a break from 15:00 to 17:00, for ten (10) hours each day, thirty (30) hours each week;

      b. 17:30 to 21:30 on Mondays and Fridays, for four (4) hours each day, eight (8) hours each week, with no break; and

      c. 17:30 to 23:00 on Saturdays and Sundays, for five and a half (5.5) hours each day, eleven (11) hours each week.

175.   At all relevant times, Plaintiff had two (2) hours of unpaid breaks from 15:00 to 17:00. However, if an order comes in at 15:00, Plaintiff must first deliver the order before breaking.

176.   In addition, Plaintiff was required to do non-tipped side jobs, including, but not limited to, cutting the Chinese broccoli, doing and packing the restaurant delivery sauces, packing the delivery food inside the delivery bag for delivery during the two (2) hour break.

177.   On all other days, Plaintiff was not given a fixed time for dinner. He had to eat his

meal while on duty. If a delivery order comes in, his meal period ends and he goes to delivery.

178.     At all relevant times, Plaintiff was paid five dollars ($5), instead of ($5.65) each hour, but was not paid for all hours worked.

179.     Plaintiff was paid only for forty (40) hours each week.

180.   Pursuant to NYCRR Part 146-2.2 and 29 USC 203 (m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of the tip credit.

181.     Defendants never informed Plaintiff that they were taking tip credit towards the minimum wage.

182.   Further, Plaintiff was required to commit part of his work day in non-tipped side jobs, including, but not limited to, cutting the Chinese broccoli, doing and packing the restaurant delivery sauces, packing the delivery food inside the delivery bag for delivery.

183.     Upon information and belief, this non-tipped work exceeds two hours or twenty percent (20%) of the Plaintiffs' workday.

184.     Plaintiff was not compensated at least at one-and-one-half of the minimum wage or his calculated hourly wage, whichever is greater, for all hours worked above forty (40) in each workweek.

185.     Plaintiff was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours.

186.     Instead of providing Plaintiff with full and accurate paystubs, Defendants instead required Plaintiff to sign work schedules that states the number of work hours worked as forty (40) hours.

187.     As part of Plaintiff's employment with Defendants, Plaintiff was required to bear

the cost of the purchase of an electric bicycle, costing one thousand four hundred and fifty

dollars ($1450) and an additional five hundred dollars ($500) for the battery.

## COLLECTIVE ACTION ALLEGATIONS

188.   Plaintiffs bring this action individually and as class representative individually and on

behalf of all other and former non-exempt tipped and non-tipped employees like

deliverymen, servers, busboys, and kitchen staff who have been or were employed by the

Defendants for up to the last three (3) years, through entry of judgment in this case (the

"Collective Action Period") and whom were not compensated at least the hourly minimum

wage and/or overtime compensation for all hours worked in excess of forty (40) hours per

week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

189.   Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C.

P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the

date that is six years before the filing of the Complaint in this case as defined herein (the

"Class Period").

190.   All said persons, including Plaintiffs, are referred to herein as the "Class."

191.   The Class members are readily ascertainable. The number and identity of the Class

members are determinable from the records of Defendants. The hours assigned and worked,

the positions held, and the rate of pay for each Class Member is also determinable from

Defendants' records. For purpose of notice and other purposes related to this action, their

names and addresses are readily available from Defendants. Notice can be provided by

means permissible under said F.R.C.P 23.

*Numerosity*

192.    The proposed Class is so numerous that joinder of all members is impracticable, and the

disposition of their claims as a class will benefit the parities and the Court. Although the

precise number of such persons is unknown, and the facts on which the calculation of the

number is presently within the sole control of the Defendants, upon information and belief,

there are more than forty (40) members of the class.

*Commonality*

193.    There are questions of law and fact common to the Class which predominate over any

questions affecting only individual class members, including:

    a.    Whether Defendant employed Plaintiffs and the Class within the meaning of

       the New York law;

    b.    Whether Plaintiffs and Class members are paid at least the minimum wage for

       each hour worked under the New York Labor Law;

    c.    Whether Plaintiffs and Class members are entitled to and paid overtime under

       the New York Labor Law;

    d.    Whether Defendants maintained a policy, pattern and/or practice of failing to

       pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the

       NYLL;

    e.    Whether Defendants maintained policy, pattern and/or practice of failing to

       provide requisite statutory meal periods;

    f.    Whether Defendants provided a Time of Hire Notice detailing rates of pay and

payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or or timely thereafter;

g.   Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiffs and the Rule 23 class on each payday; and

h.   At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

*Typicality*

194.   Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay overtime compensation. Defendants' corporate wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

195.   Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.  Plaintiffs are represented by attorneys who are experienced and competent representing Plaintiffs in both class action and wage and hour employment litigation cases.

*Superiority*

196.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  Further, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

197.   Upon information and belief, Defendants and other employers throughout the state

violate the New York Labor Law.  Current employees are often afraid to assert their rights

out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims

because doing so can harm their employment, future employment, and future efforts to

secure employment.  Class actions provide class members who are not named in the

complaint a degree of anonymity which allows for the vindication of their rights while

eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
### [Violations of the Fair Labor Standards Act—Minimum Wage
### Brought on behalf of the Plaintiff and the FLSA Collective]

198.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

199.   At all relevant times, Defendants had a policy and practice of refusing to pay the statutory

minimum wage to Plaintiffs, and the similarly situated collective action members, for some

or all of the hours they worked.

200.   The FLSA provides that any employer who violates the provisions of 29 U.S.C. §206 shall

be liable to the employees affected in the amount of their unpaid minimum compensation, and

in an additional equal amount as liquidated damages.

201.   Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced

by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum

wage when they knew or should have known such was due and that failing to do so would

financially injure Plaintiff and Collective Action members.

## COUNT II.
### [Violation of New York Labor Law—Minimum Wage
### Brought on behalf of Plaintiff and Rule 23 Class]

202.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

203.  At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

204.  At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the collective action members, for some or all of the hours they worked.

205.  Defendants knowingly and willfully violated Plaintiffs' and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

206.  An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT III.
### [Violations of the Fair Labor Standards Act—Overtime Wage
### Brought on behalf of the Plaintiff and the FLSA Collective]

207.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

208.  The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and

one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

209.   The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

210.   Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

211.   At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, *et seq.*, including 29 U.S.C. §§207(a)(1) and 215(a).

212.   The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

213.   Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

214.   Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

## COUNT IV.
## [Violation of New York Labor Law—Overtime Pay
## Brought on behalf of Plaintiff and Rule 23 Class]

215.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

216.   An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) before April 9, 2011 and one hundred percent (100%) under NY Wage Theft Prevention Act, and interest.

217.   At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiffs at one and one half times the hourly rate the Plaintiff and the class are entitled to.

218.   Defendant' failure to pay Plaintiffs their overtime pay violated the NYLL.

219.   Defendants' failure to pay Plaintiffs were not in good faith.

## COUNT V.
##  [Violation of New York Labor Law—Spread of Time Pay
## Brought on behalf of Plaintiff and Rule 23 Class]

220.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

221.   The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§190, *et seq.*, and §§650, *et seq.*, and New York State Department of Labor regulations §146-1.6.

222.   Defendants' failure to pay Plaintiffs spread-of-hours pay was not in good faith.

## COUNT VI.
### [Violation of New York Labor Law—Failure to Provide Meal Periods
### Brought on behalf of Plaintiff and Rule 23 Class]

223.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

224.    The NYLL requires that employees provide: a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts between 1 p.m. and 6 a.m. NYLL§ 162.

225.    Defendants failed to provide meal periods required by NYLL §162 for every day that Plaintiffs and the Rule 23 class work or worked.

226.    Though the Department of Labor commissioner may permit a shorter time to be fixed for meal periods than hereinbefore provided, such permit must be in writing and be kept conspicuously posted in the main entrance of the establishment. No such permit is posted.

227.    Defendants' failure to provide the meal periods required by NYLL §162 was not in good faith.

## COUNT VII.
### [Violation of New York Labor Law—Record-Keeping Requirements
### Brought on behalf of Plaintiff and Rule 23 Class]

228.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

229.    Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll records for

a period of not less than six years, as required by NYRR § 146-2.1.

230.    In fact, Defendants required Plaintiffs and similarly situated employee to sign paper

stating false hours worked.

231.    As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including

loss of earning, in an amount to be established at trial, liquidated damages, prejudgment

interest, costs and attorneys' fee, pursuant to the state law.

232.    Upon information and belief, Defendants failed to maintain adequate and accurate written

records of actual hours worked and true wages earned by Plaintiff in order to facilitate their

exploitation of Plaintiffs' labor.

233.    Defendants' failure to maintain adequate and accurate written records of actual hours

worked and true wages earned by Plaintiffs were not in good faith.

## COUNT VIII.
### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement
### Brought on behalf of Plaintiff and Rule 23 Class]

234.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

235.    The NYLL and supporting regulations require employers to provide written notice of the

rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary,

piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including

tip, meal, or lodging allowances; the regular pay day designated by the employer; the name

of the employer; any "doing business as" names used by the employer; the physical address

of employer's main office or principal place of business, and a mailing address if different;

the telephone number of the employer.  NYLL §195-1(a).

236.    Defendants intentionally failed to provide notice to employees in violation of New York

Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

237.  Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs even after the fact.

238.  Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT IX.
### [Violation of New York Labor Law—New York Pay Stub Requirement Brought on behalf of Plaintiff and Rule 23 Class]

239.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

240.  The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

241.  Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

242.  Due to Defendants' violations of New York Labor Law, each Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## COUNT X.
### [Breach of Implied Contract for Reimbursement of all Costs and Expenses of Electric Delivery Vehicle, including Depreciation, Insurance, Maintenance and Repairs]

243.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

244.   Throughout the relevant period, Defendants required their deliverymen to bear all of the "out-of-pocket" costs associated with their vehicles, including the purchase, maintenance, repair, maintenance of the delivery vehicles, including bicycles and electric bicycles.

245.   Based on their personal experience and available information, Plaintiffs can document actual "out-of-pocket" vehicle related expenses of their and electricity delivery bicycles.

246.   The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiff to maintain the delivery vehicle in working condition.

247.   Plaintiffs purchased, maintained and repaired their electric bicycle at their own expense.

248.   Plaintiffs performed these deliveries for the sole benefit of the Defendants.

249.   Defendants neither explicitly nor implicitly requested Plaintiffs to cease the purchase of gasoline and/or the maintenance of the vehicle.

250.   As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiff would incur the expenses for bicycle purchase and vehicle maintenance, in exchange for compensation from Defendants for such expenses.

251.   Defendants never compensated Plaintiff for any expenses incurred from the purchase and maintenance of the electric bicycles, and the purchase of batteries.  As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiff a reasonable sum under the afore-alleged facts.

252.   Defendants owe Plaintiff his overdue costs of delivery vehicles, cost of batter change, if

applicable, and maintenance of the bicycle.

## COUNT XI.
### [Civil damages for fraudulent filing of IRS returns. Violations of 26 USC §7434 Brought on behalf of the Plaintiff]

253.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

254.   26 USC §7434 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

255.   Due to Defendants' violations of 26 USC §7434, Plaintiffs are entitled to recover from Defendants, jointly and severally: (1) any actual damages sustained by the plaintiffs as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such a filing), (2) the cost of the action, and (3) in the court's discretion, reasonable attorneys' fees.

## COUNT XII.
### [Civil damages for Deceptive Acts and Practices. Violations of New York General Business Law §349 Brought on behalf of the Plaintiff]

256.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

257.   NY General Business Law §349 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

258.   Due to Defendants' violations of NY GBS Law §349, Plaintiffs are entitled to recover from Defendants, jointly and severally, their actual damages or fifty dollars ($50), whichever is greater, or both such actions.

259. Plaintiffs demand the right to examine, in person or by attorney, the minutes of the proceedings of the shareholders and records of shareholders of Defendant Corporation to recover wages owed as employees of the corporation

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalves, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a) Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b) Certification of this case as a collective action pursuant to FLSA;

c) Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

d) A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)    An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)    An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiff and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)    An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

h)    Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

i)    Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

j)    Reimbursement of reasonable out-of-pocket costs sustained by Plaintiffs and similarly situated deliverymen in the purchase, maintenance and repair of their delivery auto-bicycle in direct service of Defendants;

k)    An award of liquidated and/ or punitive damages as a result of Defendants' willful

failure to overtime compensation, and "spread of hours" premium pursuant to New

York Labor Law;

l)    An award of costs and expenses of this action together with reasonable attorneys' and

expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

m)    The cost and disbursements of this action;

n)    An award of prejudgment and post-judgment fees;

o)    Providing that if any amounts remain unpaid upon the expiration of ninety days

following the issuance of judgment, or ninety days after expiration of the time to

appeal and no appeal is then pending, whichever is later, the total amount of judgment

shall automatically increase by fifteen percent, as required by NYLL §198(4); and

p)    Such other and further legal and equitable relief as this Court deems necessary, just,

and proper.

Dated: September 30, 2016
        Flushing, New York

TROY LAW, PLLC
*Attorneys for the Plaintiffs, proposed FLSA*
*Collective and Proposed Class Plaintiffs*

  /s/ John Troy
John Troy (JT0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
Email: johntroy@troypllc.com