UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
YUNJIAN LIN, YOUNG JUN LI, WEI WEI :
DING, LI WENG, WEI TING ZHAO, YUHAI
ZHU, YOUMIN SHEN and MIAO WANG, :
on their own behalf and on behalf of others
similarly situated, :

                                Plaintiffs, :

                      -against- : **REPORT AND RECOMMENDATION**

GRAND SICHUAN 74 ST INC d/b/a GRAND : 15-CV-2950 (RA) (KNF)
SICHUAN 74, GRAND SICHUAN 75 ST INC.
d/b/a GRAND SICHUAN 74, GRAND SICHUAN :
NY INC. d/b/a GRAND SICHUAN NY, GUANG
JUN LI, YONG SHU LI, LI JIANG, YONG LI LI, :
GUANG LI LI and CHENG CHEN,
                                                  :
                                Defendants.
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE RONNIE ABRAMS, UNITED STATES DISTRICT JUDGE

**PROCEDURAL BACKGROUND**

      Plaintiffs Yunjian Lin ("Lin"), Yong Jun Li ("Li'), Wei Wei Ding ("Ding), Li Weng ("Weng"), Weiting Zhao ("Zhao"), Youmin Shen ("Shen"), Miao Wang ("Wang") and Yuhai Zhu ("Zhu") seek damages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and New York Labor Law ("NYLL") to recover: (1) unpaid minimum wages under FLSA and NYLL; (2) unpaid overtime compensation under FLSA and NYLL; (3) unpaid spread-of-hours compensation under NYLL; (4) damages for failing to provide meal periods under NYLL; (5) damages for failing to comply with record-keeping and wage notice requirements under NYLL; (6) damages for "breach of implied contract for reimbursement of all costs and expenses of electric delivery vehicle, including depreciation, insurance, maintenance

1

and repairs"; (7) damages for "fraudulent filing of IRS returns under 26 U.S.C. § 7434"; and (8) damages for deceptive acts and practices under New York General Business Law § 349.  On July 29, 2019, your Honor granted a judgment by default, except as to claims under 26 U.S.C. § 7434 and New York General Business Law § 349, which were dismissed.  See Docket Entry No. 210.  The matter was referred to the undersigned for an inquest on damages.  On June 10, 2020, your Honor adopted the Report and Recommendation ("the Report") of the undersigned, Docket Entry No. 239, declined to award the plaintiffs damages and provided "Plaintiffs one more opportunity to cure the deficiencies identified in Judge Fox's Report, and resubmit revised Proposed Findings of Fact and Conclusions of Law, as well as accompanying exhibits and affidavits."  Docket Entry No. 240.  Thereafter, the plaintiffs submitted their revised proposed findings of fact and conclusions of law, Docket Entry No. 241, accompanied by their counsel John Troy's ("Troy") declaration with exhibits, Docket Entry No. 242, and made a motion for an award of attorneys' fees and costs, Docket Entry No. 243.  The plaintiffs' revised submissions are unopposed.

## PLAINTIFFS' REVISED SUBMISSIONS

The plaintiffs contend that the defendants did not maintain and provide employment records of their hours; thus, the hours worked as stated "under 'Section II. Plaintiff's Hours Worked' should be taken as true as alleged" and they are based on the plaintiffs' affidavits.  Lin asserts that, from October 1, 2010, to March 31, 2014, he worked six days a week for 58.5 hours per week, from July 1, 2012, to February 28, 2013, he worked seven days a week for 49 hours per week, from March 1, 2013, to December 30, 2013, he worked seven days a week for 61 hours per week and, from December 31, 2013, to February 28, 2014, he worked seven days a week for 49 hours per week.  From September 1, 2012, to December 31, 2014, Ding worked six days a week for 49 hours per week.  From November 2011, to December 14, 2012, and from

December 1, 2013, to December 31, 2014, Weng worked two days a week for 22 hours per week. From March 1, 2013, to December 31, 2013, Zhao worked 43.5 hours per week. From April 28, 2014, to April 30, 2016, Shen worked six days a week for 33.5 hours per week. From January 30, 2013, to May 13, 2013, Wang worked seven days a week for 51.5 hours per week. From October 1, 2010, to August 31, 2011, Zhu worked six days a week for 75 hours per week.

Lin was compensated $1,800 per month, from October 1, 2010, to December 1, 2010, $1,900 per month, from December 2, 2010, to February 1, 2011, $2,000 per month, from February 2, 2011, to February 1, 2012, $2,100 per month, from February 2, 2012, to February 1, 2013, $2,300 per month from February 2, 2013, to March 31, 2014. Lin did not receive any written information about minimum or overtime wages during his 181.43 weeks of employment. Li was compensated $380 every two weeks, from July 1, 2012, to February 28, 2014, and did not receive any written information about minimum or overtime wages during 86.43 weeks of employment. Ding was compensated five dollars per hour for each hour worked, including overtime hours and was not paid for two hours of work performed during his break. During the 86.57 weeks of employment, Ding did not receive any written information about minimum or overtime wages. Weng was compensated $70 per week, from November 2011 to December 14, 2012, and from December 1, 2013, to December 31, 2014. Weng was not reimbursed $750 for the electric bicycle he was required to purchase as part of his employment. During the 114.71 weeks of his employment, Weng did not receive any written information about minimum or overtime wages. Zhao was compensated $180 per month from March 1, 2013, to December 31, 2013. During the 43.57 weeks of his employment, Zhao did not receive any written information about minimum or overtime wages. Shen was compensated $168 per week from April 28, 2014, to April 30, 2016. During the 104.43 weeks of his employment, Shen did not receive any written

information about minimum or overtime wages. Wang was compensated $190 per week from January 30, 2013, to May 13, 2013. During the 16.14 weeks of his employment, Wang did not receive any written information about minimum or overtime wages. Zhu was compensated at the hourly rate of $4.65 for the period from October 1, 2010, to August 31, 2011. During the 47.57 weeks of employment, Zhu did not receive any written information about minimum or overtime wages.

Attached to Troy's declaration are Exhibit 01, the "Affidavit of Accounting," identifying the calculation methods used, the reasons for the calculation methods used and explaining each step in the performance of the calculation, Exhibit 02, "Damage Calculation Spreadsheets, detailing the amount of money Defendants owe Plaintiff pursuant to both the FLSA and NYLL, along with a summary," and Exhibits 03-10, the plaintiffs' affidavits. The plaintiffs seek $575,260.93 in damages, $53,681.00 in attorney's fees and $2,368.80 in costs. The plaintiffs' damages include "wage and hour damages, liquidated damages, paystub and wage notice violations, and prejudgment interest," consisting of the following totals: (1) $191,635.80 for Lin; (2) $81,504.69 for Li; (3) $57,781.74 for Ding; (4) $53,438.81 for Weng; (5) $28,835.20 for Zhao; (6) $58,553.34 for Shen; (7) $23,344.64 for Wang; and (8) $81,076.72 for Zhu.

In connection with the motion for attorney's fees, the plaintiffs seek fees from the time counsel began client intake through the date of the fee application. They contend that the hourly rates requested are reasonable: (a) $550 for Troy; (b) $350 for the services of attorneys George Kibum Byun ("Byun") and Aaron B. Schweitzer ("Schweitzer"); (c) $250 for associates Joseph Myers ("Myers"), Joseph Indelicato ("Indelicato") and Shuyang Xie ("Xie"); (d) $200 for William Lou ("Lou") and office manager Preethi Kilaru ("Kilaru"); (e) $150 for clerk Tracy-Ann Ulett ("Ulett") and paralegals Ellen Chen ("Chen"), Bingyu Huang and Bella Ho ("Ho"), and

accountant Maggie Huang; and (f) $100 for accountant assistant Xinchun Peter Pan ("Pan"). The plaintiffs assert that, "because there are two sets of Defendants, and Plaintiffs' counsel has previously submitted an invoice in support of his Motion for Joint Fairness Approval under *Cheeks*, Plaintiffs' Counsel seeks Attorneys' fees and costs less the amount previously invoiced." The plaintiffs seek reimbursement "only for costs incurred subsequent to the Joint Fairness Letter Motion, foregoing the cost of service and the filing of the Complaint," and the costs requested consist of "the service of Default Motions, Second Amended Complaint, DOS Service."

In support of the fee request, Troy submitted his declaration with Exhibit 1, "Time and Billing records." Troy states that he kept contemporaneous time records of the hours he expended and instructed, supervised and ensured that all associates and employees of his law firm, Troy Law, PLLC ("Troy Law") keep contemporaneous time records. Troy provided information concerning his extensive experience in wage-and-hour and employment discrimination cases, since his admission to the New York bar in 1989, listing numerous cases in which he appeared as counsel of record. Troy has published extensively on the subject of minimum wage, overtime compensation and record-keeping requirements, including abroad. Troy states that his hourly rate of $550 was approved previously by various courts.

Schweitzer, the managing associate at Troy Law, graduated from Fordham University School of Law in 2016, and was admitted to the New Jersey bar in 2017 and the New York bar in 2018. Since Schweitzer joined Troy Law, he has litigated numerous wage-and-hour cases, including multi-plaintiff and collective and class actions and is currently an attorney of record in numerous cases. In a non-contingent structure, Schweitzer charges an hourly rate of $350, which was approved by courts as reasonable. He expended 66.65 hours on this case.

Byun was the managing associate at Troy Law. He graduated from Benjamin N. Cardozo Law School in 2015, and was admitted to the New York bar in 2015. Byun has litigated about 100 wage-and-hour cases in federal courts during his tenure at Troy Law, many of them complex and including wage-and-hour and employment discrimination actions. Byun obtained favorable outcomes numerous times via motion practice, and through settlements in several cases. In a non-contingent fee structure, Byun charges an hourly rate of $350. He expended 41.85 hours on this case.

Indelicato was an associate at Troy Law, who graduated from the George Washington University Law School in 2016, and was admitted to the New York bar in 2017. Indelicato worked as a litigation associate and the hourly rate requested for his work on this case is $250, for 1.3 hours expended on this case. Myers was an associate at Troy Law who graduated from the George Washington University Law School in 2014, and was admitted to the New York bar in 2016. The hourly rate requested for Myers is $250, for 27.15 hours he spent on this case. Xie was an associate at Troy Law. She graduated from Tulane University Law School in 2017, and was admitted to the New York bar in 2018. The requested hourly rate for the 3.93 hours Xie spent on this case is $250, which rate has been judicially approved previously. Lou was an associate at Troy Law who graduated from Northwestern University Pritzker School of Law in 2016, and was admitted to the New York bar in 2019. The requested hourly rate requested for Lou is $200 for 57.66 hours Lou expended on this case. Kilaru is a managing clerk at Troy Law who earned her L.L.M. from SMU Dedman School of Law in 2017, and joined Troy Law in April 2018. Kilaru's requested hourly rate is $200 for the 18.85 hours she worked on this case. Ulett was a legal intern at Troy Law and the requested hourly rate for Ulett's services is $150 for 0.75 hours expended on this case. Chen is a legal assistant who graduated from University of

Tsukuba in 2018, and earned a Master of Science in Management from the University in Edinburgh in 2019. Chen's requested hourly rate is $150 for the 2.99 hours contributed to this case. Ho was a legal assistant at Troy Law who graduated from Soochow University in Taiwan and earned a Master in Business Administration degree from the University of Illinois, at Chicago, in 2016. Ho's requested hourly rate is $150, which was approved previously by the court, for the 12.81 hours expended on this case. Maggie Huang is the certified public accountant at Troy Law, who graduated from National Chung Hsin University in Taiwan, in 1982, and earned a Master in Information Systems degree from the University of East Michigan in 1986. Maggie Huang's requested hourly rate is $150, previously approved by the court, for 0.5 hours expended on this case. Pan was an accounting assistant at Troy Law who graduated from Baruch College in 2018, and his requested hourly rate is $100 for 0.27 hour expended on this case. Bingyu Huang holds a Bachelor of Business Administration degree from Farleigh Dickinson University since 2017, and has management experience. Bingyu Huang's requested hourly rate is $150, previously approved by the court, for 7.01 hours expended on this case. Chen is the office manager at Troy Law and coordinates client meetings and manages the staff's schedule. Chen's requested hourly rate is $100 for 0.18 hours expended on this action.

Troy states that the rates requested are comparable to the prevailing market rates as indicated in recent cases. Troy seeks fees for 66.34 hours of work at an hourly rate of $550 and hourly rates between $200 and $350 for Troy Law associates, and between $100 and $150 for paralegals, "less the amount initially invoiced on June 1, 2018 on Docket 154-2." Troy seeks $101,530.33 in attorneys' fees, reduced by the amount previously invoiced of $47,849.33, for a total of $53,681 in attorneys' fees. Troy states that the out-of-pocket expenses amount of $3,537.55 "minus amount initially invoiced in support of the Joint Fairness Letter Motion

Docket Entry No. 154-2 (and shouldered entirely by Plaintiffs' attorneys), $1,168.75, is $2,36.80."

## LEGAL STANDARD

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). Establishing the appropriate amount of damages involves two steps: (1) "determining the proper rule for calculating damages on . . . a claim"; and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule." Id. When assessing damages, a court cannot "just accept [the plaintiff's] statement of the damages"; rather, damages must be established "with reasonable certainty." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997).

## FLSA

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages . . . not less than . . . $7.25 an hour.
>
> 29 U.S.C. § 206(a)(1)(C).
>
> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
>
> 29 U.S.C. § 207(a)(1).

"The regular rate of pay at which the employee is employed may in no event be less than the statutory minimum." 29 C.F.R. § 778.107. "The 'regular rate' under the Act is a rate per hour," unless an employee's earnings are determined on another basis. 29 C.F.R. § 778.109. "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However,

> if the employer shows to the satisfaction of the court that the act or omission giving rise to [an action under FLSA] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.
>
> 29 U.S.C. § 260.
>
> [I]f it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.
>
> 29 C.F.R. § 531.35.

"[I]n addition to any judgment awarded to the plaintiff or plaintiffs," the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

### NYLL

The basic minimum hourly wage rate was $7.25 per hour in 2010 and after January 1, 2011, $8.00 per hour on and after December 31, 2013, $8.75 per hour on and after December 31,

9

2014, until and including December 30, 2015, $9 per hour on and after December 31, 2015, until and including December 30, 2016, $11 per hour on and after December 31, 2016 (for employers of eleven or more employees), $10.50 per hour on and after December 31, 2016 (for employers of ten or fewer employees), $13 per hour on and after December 31, 2017 (for employers of eleven or more employees), $12 per hour on and after December 31, 2017 (for employers of ten or fewer employees), $15 per hour on and after December 31, 2018.  See 12 NYCRR § 146-1.2. "An employer shall pay an employee for overtime at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek." 12 NYCRR § 146-1.4. "The spread of hours is the length of the interval between the beginning and end of an employee's workday." 12 NYCRR § 146-1.6. "On each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." 12 NYCRR § 146-1.6(a).  "The term regular rate shall mean the amount that the employee is regularly paid for each hour of work, before subtracting a tip credit, if any.  12 NYCRR § 146-3.5(a).

> If an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week.
>
> 12 NYCRR § 146-3.5(b).

"If an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage." 12 NYCRR § 146-2.7(c).

NYLL requires every employer to provide written notice of the rate of pay and the basis thereof, whether paid by the hour or otherwise, any allowances and certain other work-related

information, as well as statements, "with every payment of wages, listing" certain information, including the dates of work covered by that payment of wages and the rate of pay and basis thereof. NYLL §§ 195(1) and (3). A plaintiff may recover, for the employer's failure to provide required notices, damages not exceeding $5,000, "together with costs and reasonable attorney's fees," under each of NYLL §§ 195 (1) and (3). See NYLL §§ 198 (1-b) and (1-d). NYLL Article 19 provides:

> If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due. Any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action.
>
> NYLL § 663(1).

"No employer shall make any deduction from the wages of an employee, except deductions which," inter alia, "are expressly authorized in writing by the employee and are for the benefit of the employee, provided that" certain conditions are met. NYLL §193(1)(b).

### ATTORNEY'S FEES

When exercising their discretion to determine the reasonableness of the attorney's fees sought in an action based on a federal question, courts in this Circuit use the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). In calculating the presumptively reasonable fee, a district court must consider, among others, the twelve factors

articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).  See Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 190.  Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

> Id. at 186-87 n.3.

A reasonable hourly rate is "the rate prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Farbotko v. Clinton Cty. of N.Y., 433 F.3d 204, 208 (2d Cir. 2005) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 1547 n.11 (1984)).  "Thus, 'a reasonable hourly rate' is not ordinarily ascertained simply by reference to rates awarded in prior cases." Id.  "[T]he equation in the caselaw of a 'reasonable hourly fee' with the 'prevailing market rate' contemplates a case-specific inquiry into the prevailing market rates for counsel of similar, experience and skill to the fee applicant's counsel.  This may, of course, include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." Id. at 209.  "[T]he fee applicant has the burden of showing by 'satisfactory evidence—in addition to the attorney's own affidavits'—that the requested hourly rates are the prevailing market rates." Id. (quoting Blum, 465 U.S. at 896 n.11, 104 S. Ct. 1547 n.11).  A fee application that is not supported by evidence of "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done" should normally be denied. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983).

## APPLICATION OF THE LEGAL STANDARD

The Court adopts, as its finding of facts, the plaintiff's factual assertions concerning the hours worked, compensation received, expenses incurred and lack of written notices, as explained above. Upon review of the plaintiffs' revised submissions, the Court finds that the plaintiffs have cured the deficiencies found in their original inquest submissions and provided detailed and accurate explanations of the applicable law and evidence of their damages, including the damages calculation, as well as information pertaining to their attorneys' fees and costs request, consisting of detailed descriptions of the various attorneys' experiences, the work performed and a summary of the contemporaneously kept time records. Based on the evidence in the plaintiffs' revised inquest submissions, the Court finds that the hourly rates requested in the plaintiffs' motion for attorneys' fees, and the hours requested are reasonable. Accordingly, awarding the plaintiffs the requested damages and attorneys' fees and costs is warranted.

## RECOMMENDATION

For the foregoing reasons, I recommend that, the plaintiffs' motion for attorneys' fees, Docket Entry No. 243, be granted, and the following damages be awarded to the plaintiffs: (1) $191,635.80 for Lin; (2) $81,504.69 for Li; (3) $57,781.74 for Ding; (4) $53,438.81 for Weng; (5) $28,835.20 for Zhao; (6) $58,553.34 for Shen; (7) $23,344.64 for Wang; (8) $81,076.72 for Zhu; (9) $53,681 in attorneys' fees; and (10) $2,368.80 in costs.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Any requests for an extension of time for filing objections must be directed to Judge Abrams. *Failure to file objections within fourteen (14)*

*days will result in a waiver of objections and will preclude appellate review.* <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>Cephas v. Nash</u>, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York  
      August 13, 2020

Respectfully submitted,

*/s/ Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE